HARRY, TRUSTEE, APPELLEE, *v.* RUSSELL ET AL.,
APPELLANTS.

(No. 670—Decided June 16, 1941.)

*Mr. John Gutknecht,* for appellee.
*Messrs. Frick, Peters & Abbott,* for appellants.

LLOYD, J.   On August 12, 1940, Laurence W. Harry, as trustee in bankruptcy of the estate of Ruben Oscar Russell, filed his petition in the Court of Common Pleas against Russell, the bankrupt, and his daughter Melba Russell, praying that certain real estate claimed to be

part of the estate of the bankrupt be re-conveyed to him for the subjection by the trustee to the payment of his debts. Later Bradyn Russell, a minor son of the bankrupt, was made a party defendant and filed an answer and cross-petition by his duly appointed guardian *ad litem*. An answer and cross-petition was also filed by Melba Russell.

On November 12, 1939, David B. Russell, seventeen-year-old son of Ruben, and a brother of Melba and Bradyn Russell, was killed in an automobile collision. An action thereafter brought by Ruben Russell as administrator for the benefit of the next of kin of David B. Russell was settled without trial in May 1940. In conjunction with the settlement of the wrongful death claim, claims of Ruben Russell for damages to his automobile truck and a survivorship claim arising out of the injuries finally resulting in the death of David B. Russell, were discussed and settled. After the amounts thus agreed upon and attorney fees were deducted from the gross amount agreed upon in settlement of these respective claims, there remained $2,500, of which $100 was paid to attorneys, leaving $2,400 to be apportioned among the next of kin of the decedent. Thereafter Ruben Russell, the father, Melba Russell, a sister, and Bradyn Russell, a brother of the decedent and their attorneys met in the office of Messrs. Frick, Peters & Abbott, to discuss the distribution of this sum of $2,400, and it is undisputed that it was then and there agreed that $1,200 was to be apportioned to the father and $1,200 to the brother and sister, and that, because the brother Bradyn was a minor, the apportioned amount to him and his sister was also to be paid to the father and by him used for the purchase for them of certain farm land. The apportioned distribution of the proceeds of the settlement having been thus agreed upon, the parties accompanied by their attorneys went to the office of the probate judge of Seneca county by whom the administrator was appointed, and advised

him as to their agreement. As to the interview thus had and his understanding of what was desired and agreed to by the parties, the probate judge testified:

"My recollection is that rather than to make any distribution to the minor children with the additional expense of the guardianship that the order was made to pay the money to the father and put it, invest it to the good of the minor children, minor brother and sister in this case, for the purpose of buying a home, the money he received by way of settlement."

Further he testified: "One half of it was to go to the children," the other half "went to him."

Thereupon an entry prepared by the attorneys for the administrator in the wrongful death action and approved by the probate judge was filed in the Probate Court. It reads as follows:

"This day Ruben O. Russell, administrator of the estate of said David B. Russell, deceased, appeared in open court and made application for an order of the court to apportion among the beneficiaries the amount of twenty-five hundred ($2,500) dollars received by him on settlement of his claim against The Norwalk Truck Line Company for the wrongful death of said David B. Russell as in said application set forth. On consideration whereof the court finds that it is fair and equitable, having reference to the age and condition of such beneficiaries and the laws of descent and distribution of personal assets left by persons dying intestate that said amount should be apportioned * * * to the father, Ruben O. Russell * * * and it is ordered that said administrator distribute said amount accordingly."

Farm land of approximately eighteen acres was purchased, the legal title thereto being taken in the name of Melba Russell, $1,200 of the wrongful death settlement being used to pay therefor. Pursuant to the settlement agreement, one-half of the property purchased vested in Melba and the other undivided one-half was held by her in trust for her nineteen-year-old brother

Bradyn. At the time of the settlement, of the wrongful death action and of the purchase of this farm land, the father was insolvent and later, on July 3, 1940, filed a petition in bankruptcy, Laurence W. Harry, as above stated, being the appointed trustee. It was and is contended by the trustee, and the Court of Common Pleas so found, that the entry of distribution filed in the Probate Court was conclusively determinative of the right to and ownership of the proceeds of the wrongful death action as therein ordered distributed and that by reason thereof the $1,200 used in the purchase of the land taken in the name of Melba was a mere gift and the land, therefore, should be conveyed by her to Ruben Russell for the benefit of his creditors. From this judgment of the Court of Common Pleas the defendant Melba Russell, and the defendant Bradyn Russell by his guardian *ad litem,* appeal on questions of law and fact.

Section 10509-167, General Code, relates to the commencement of an action for wrongful death and provides that the personal representative in whose name the action is brought, if appointed in this state, "with the consent of the court making such appointment, may, at any time before or after the commencement of the suit, settle with the defendant the amount to be paid."

Section 10509-168, General Code, provides that:

"The amount received by such personal representative, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them, and unless the share of each shall be adjusted among themselves, by the court making the appointment in such manner as may be fair and equitable, having due regard to the pecuniary injury to each beneficiary resulting from such death and to the age and condition of such beneficiaries."

Although this entry, in reality a consent entry, could, and it would seem, should have been explicit as to its objective purpose, there does not appear therein any

express prohibitive finding or order as to the performance of the obligatory agreement of the parties as to the disposition and use of the settlement proceeds. Conjoined with the facts, it manifests rather a purpose to provide the vehicle whereby the fund could be transferred from Russell the administrator to Russell individually and by him distributed in accordance with the agreement in a way that would avoid the expense of appointing a guardian to receive for the nearly-of-age minor the share of the fund allotted to him.

In any event, the brother and sister being next of kin of the decedent, and having an interest as such in the proceeds of the settlement, and that interest being admitted and adjusted by the agreement entered into with and by them in the office of their attorneys, equity should enforce the trust thus created, especially since Section 10509-168, General Code, expressly authorizes such settlement, providing as it does that the amount received by the administrator by settlement or otherwise shall be distributed by the court to the beneficiaries or any of them in such manner as may be fair and equitable "unless the share of" such beneficiary "shall be adjusted among themselves."

The evidence clearly and undeniably shows that these beneficiaries did satisfactorily adjust and determine among themselves the share of each of them, and having done so, equity surely, if its vaunted power to do justice is meaningful, should and will, under the facts and circumstances in evidence, affirm and enforce the trust thereby created. The proceeds of the settlement represented no earnings of Russell but were the result of the tragic death of his son, a brother of Melba and Bradyn. He was insolvent at the time of the payment thereof to the administrator, and so far as appears in the record, none of his creditors relied thereon, nor was any of his indebtedness incurred subsequent thereto. None of the creditors, therefore, is injured thereby and the $1,200 by virtue of the agreement which the entry of

the Probate Court does not controvert, was held by Russell in trust for his two children for the agreed-upon purpose, which purpose was executed as agreed.

The evidence discloses no collusion in the making or consummation of the agreement to defraud anybody. Quite the contrary! No intervening claims existed against the fund arising from the settlement and no one was entitled to any part thereof until the agreement of the next of kin became effective by its performance, they being the only ones having any claim therein or any right to any part thereof. To the extent of the $1,200 which became his, the assets of the father were increased and it may be inferred that if it was planned or intended to defraud creditors the way could easily have been found to divert the amount agreed upon to be received by him, and it seems unnecessary to advert to the consideration for the agreement. Plainly, it was the mutual conclusion to distribute the fund in which each of the distributees had an interest, in the manner decided upon.

The decision of this court is that the $1,200 was held in trust by Ruben Oscar Russell for Melba and Bradyn Russell, and that one-half of the real estate purchased therewith is held in trust by Melba for her brother Bradyn. The petition of the plaintiff trustee is therefore denied and dismissed.

*Petition dismissed.*

OVERMYER and CARPENTER, JJ., concur.

(No. 670—Decided July 7, 1941.)

ON APPLICATION for rehearing.

LLOYD, J. The plaintiff trustee has filed his application for "a rehearing of this matter because it is apparent from the court's opinion that the court is under the impression that Ruben Russell, Melba Russell and

Bradyn Russell were the only interested parties in the wrongful death settlement and the alleged distribution upon which the court bases its decision,'' whereas there were in fact a younger minor half-sister and a younger minor half-brother of the decedent, David Russell, and that the agreement therefore was not a lawful compliance with that portion of Section 10509-168, General Code, permitting an agreement to be made and that the only method of lawful distribution of the proceeds of the settlement was that evidenced by the entry of the Probate Court.

No point was made either in brief or argument that this omission had any bearing upon the issues presented by the appeal, and, if important, the evidence shows that the Probate Court was fully cognizant of and approved the division of the proceeds as agreed.

The only question presented or argued to this court, was that stated in the written opinion heretofore announced, to wit, whether the agreement could be recognized as valid and enforcible in view of the journalized order of distribution made by the probate judge.

In his brief the trustee stated the questions involved to be:

''(1) To whom did the $1,200 that was transferred by the appellant, Ruben Oscar Russell, to the appellant, Melba Russell, belong, and (2) if this money belonged to Ruben Oscar Russell, was the transfer of the same to Melba Russell fraudulent?''

All of the argument orally and in his brief was that the testimony of the probate judge and of the other witnesses as to the agreement was irrelevant and incompetent because the entry of the Probate Court was final and conclusive, numerous cases being cited that a court speaks only through its entry.

This court in its written opinion cited and quoted from Section 10509-168, General Code, only as indicating that the power of the Probate Court is not necessarily all inclusive as to the disposition of the proceeds

of a wrongful death settlement and does not purport to preclude the making of an agreement such as was made in the instant case; nor does the agreement as made conflict in any way with the order of the Probate Court as expressed in its entry.

Regardless of the distributive order of the court, Ruben Oscar Russell had a right to make this agreement with Melba and Bradyn, the law not prohibiting a minor from making a contract, and there being no evidence of an intent thereby on the part of any of them to defraud creditors of Ruben Oscar Russell and no knowledge on the part of the son and daughter of any such intent or of his then insolvency, they, as next of kin, claiming to have and, as the evidence shows, being recognized as having an interest in the proceeds of the settlement are now entitled to hold the land purchased with their agreed share thereof.

Certainly as this court thought and now thinks, the trustee can not invalidate the agreement simply because, as he now claims, two other minor children were not parties thereto. If as this court has decided, the agreement is valid, then the fact that the half-brother and half-sister were omitted therefrom, would not affect its validity, so far at least as the trustee is concerned. The contract having been fully performed, this court finds no reason advanced in the application for a rehearing justifying a reversal of its decision heretofore made, denying the prayer of the petition of the trustee, for a decree ordering Melba to convey the land to her father for subjection by the trustee to the payment of the debts of the insolvent bankrupt.

*Application denied.*

OVERMYER and CARPENTER, JJ., concur.